# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEPHEN S.**, | |
| *Plaintiff,* | No. 24-cv-10055 |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| *Defendant.* | |

<u>**APPEARANCES**</u>:

**Alan H. Polonsky**
POLONSKY AND POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

   *On behalf of Plaintiff.*

**Catherine Elisabeth Hamilton**
**Erica Adams**
SOCIAL SECURITY ADMINISTRATION, OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Stephen S.'s[1] appeal from a denial of Social Security disability benefits and supplemental security income by the Commissioner of Social Security ("Defendant" or "Commissioner"). (ECF No. 1). For the reasons that follow, the Court **VACATES** the Commissioner's final decision and **REMANDS** this case for further administrative proceedings consistent with this Opinion.

## I.    BACKGROUND

The Court recites herein only those facts necessary for its determination of this appeal.

### A.  Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on August 21, 2021, alleging an onset date of disability beginning August 1, 2019,[2] due to a variety of physical and mental impairments including manic depression, bipolar disorder, poor attention and focus, back surgeries, herniated discs, neck condition, wrist injury, numbness in feet, rotator cuff injuries, and poor functioning heart/arrythmia. (AR 253–259, 313–319). Plaintiff's claims were denied initially on December 18, 2021, (AR 94), and upon reconsideration on February 22, 2022. (AR 104).

On March 30, 2022, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 121–122). The ALJ held two hearings—one on June 8, 2023, and another on February 14, 2024—at which Plaintiff appeared with counsel and testified. (AR 42–85). The ALJ

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

[2] The onset date was later amended to January 1, 2023. (AR 302).

also heard testimony from a medical expert, Richard Cohen, Ph.D., and two vocational experts. (*Id.*).

The ALJ issued a Decision Denial on March 12, 2024. (AR 7–34). Plaintiff sought review from the Appeals Council, which was denied on September 30, 2024, making the ALJ's decision the Commissioner's final decision. (AR 1–6).

## B.  Procedural History

Plaintiff timely filed this appeal on October 25, 2024, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1). Plaintiff submitted his opening brief on January 5, 2025, (ECF No. 6); Defendant filed a response on February 4, 2025, (ECF No. 8); and Plaintiff filed a reply on February 11, 2025. (ECF No. 9). Following briefing, the Court held a status conference on July 23, 2025, to address the parties' arguments concerning whether Plaintiff was denied due process when the ALJ relied on a post-hearing consultative examination without permitting cross-examination of the examiner, Lewis Lazarus, Ph.D. (ECF No. 11). The Court directed the parties to submit supplemental briefs on that issue. (*Id.*). Defendant filed its supplemental brief on July 30, 2025, (ECF No. 12), and Plaintiff filed his response on July 31, 2025. (ECF No. 13).

## C.  Factual Background

Plaintiff has been evaluated by numerous medical providers over the course of his disability claim and alleges disability based on a range of mental and physical impairments. (AR 313–319). The only issue presented in this appeal, however, is whether the ALJ violated Plaintiff's due process rights under *Wallace v. Bowen*, 869 F.2d 187 (3d Cir. 1988) by refusing to permit questioning of Dr. Lazarus at the supplemental hearing. (Pl.'s Br., ECF No. 6 at 6, 17–19). Accordingly, the Court limits its discussion of the record to the evidence bearing on that issue and

3

briefly summarizes only the medical findings relevant to the due process claim. This recitation is not comprehensive.

Plaintiff filed an application for DIB on August 3, 2021, alleging disability beginning August 1, 2019, based on physical and mental impairments. (AR 313–319). After his claim was denied initially and upon reconsideration, an ALJ held a hearing on June 8, 2023. (AR 64–85).

Following that hearing, the ALJ referred Plaintiff for a consultative psychological examination with Dr. Lazarus, which was conducted on September 26, 2023. (AR 458–64). Dr. Lazarus administered standardized IQ testing, resulting in a verbal comprehension score of 68, a perceptual reasoning score of 86, a working memory score of 69, a processing speed score of 53, and a full-scale IQ of 63. (AR 459). He found these results valid and consistent with full effort. (*Id.*). He further opined that Plaintiff had no limitation in understanding, remembering, or carrying out simple instructions; moderate-to-marked limitation in performing complex tasks; and mild limitation in social interaction and adaptation. (AR 461–62).

The ALJ then issued a proffer notice to Plaintiff advising him that Dr. Lazarus's report had been added to the record and that he had the right to request a supplemental hearing or to question the author of the report if the ALJ determined such questioning was necessary for a full inquiry. (AR 386–90). Plaintiff's counsel responded that he had no objection to admission of the report but argued that Dr. Lazarus's findings established profound intellectual deficits inconsistent with the ability to perform any work. (AR 391–392). Counsel requested, if a favorable decision were not issued on the existing record, that a supplemental hearing be held to permit questioning of Dr. Lazarus and a vocational witness regarding the effect of the IQ scores on employability. (*Id.*).

The ALJ subsequently held a supplemental hearing on February 14, 2024. (AR 42–63). But rather than calling Dr. Lazarus, the ALJ took testimony from an independent medical expert,

Dr. Cohen. (AR 47–51). Dr. Cohen testified that the IQ scores reported by Dr. Lazarus appeared inconsistent with Plaintiff's overall functioning. (AR 49–50). Specifically, Dr. Cohen noted that Plaintiff had previously completed a roofing certification and obtained a driver's license—achievements that suggested higher cognitive ability than reflected by a full-scale IQ of 63. (*Id.*). He therefore opined that Plaintiff had only moderate limitations in utilizing and applying information; interpersonal relationships; concentration, persistence, and pace; and adapting and managing himself. (*Id.*).

Based on the record, including Dr. Lazarus's report and Dr. Cohen's testimony at the supplemental hearing, the ALJ issued an unfavorable decision on March 12, 2024, finding that Plaintiff was not disabled under the Social Security Act. (AR 7–34).

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

6

**B. Sequential Evaluation Process**

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

**III. <u>ALJ DECISION</u>**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of August 1, 2019, through his date last insured of June 30, 2023. (AR 12).

At step two, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, anxiety disorder, and unspecified learning disorder. (AR 12). The ALJ also found that several of Plaintiff's other impairments—including cervical strain, lumbar degenerative disc disease, right wrist pain, neuropathy, bilateral shoulder degenerative joint disease, vision impairment, hypertension, aortic dysfunction, shortness of breath, personality disorder, somatoform disorder and substance use disorder—were non-severe because they did not cause more than minimal vocational limitations or were well controlled with conservative treatment. (AR 12–18).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of a listed impairment. (AR 18). In evaluating the "paragraph B" criteria of the mental listings, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (AR 19–20). The ALJ also determined that the "paragraph C" criteria were not satisfied. (AR 20).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to work at all exertional levels, subject to the following nonexertional limitations: "[Plaintiff] was limited simple routine and repetitive tasks, could have no public contact and only occasional contact with co-workers and supervisors." (AR 20).

In formulating this RFC, the ALJ considered Plaintiff's testimony, treatment records, and the medical opinion evidence. The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his mental symptoms were not entirely consistent with the medical and other evidence. (AR 21). The ALJ noted that although Plaintiff alleged significant

mental limitations, he lived independently, used public transportation, and had obtained a driver's license and completed a roofing apprenticeship. (AR 25).

The ALJ considered the consultative report from Dr. Lazarus, who opined that Plaintiff had no limitation in understanding, remembering, or carrying out simple instructions; a moderate limitation in performing complex tasks; and a marked limitation in making complex work-related decisions, based on limited intellectual functioning. (AR 26–27). The ALJ found this opinion only partially persuasive, reasoning that Dr. Lazarus appeared to rely in part on Plaintiff's physical functioning, which was outside his area of expertise. (AR 26). The ALJ instead concluded that the record supported no more than moderate limitations overall, crediting the testimony of medical expert, Dr. Cohen. (*Id.*). Specifically, Dr. Cohen found that the IQ scores obtained by Dr. Lazarus—reflecting a full-scale IQ of 63—were inconsistent with Plaintiff's demonstrated functioning, including his ability to complete a roofing apprenticeship and obtain a driver's license. (AR 25–26). Dr. Cohen instead assessed only moderate mental limitations, which the ALJ found persuasive and consistent with the record. (AR 26).

At step four, the ALJ found that Plaintiff could no longer perform his past relevant work as a roofer. (AR 27). However, at step five, relying on the testimony of a vocational expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other work in the national economy. (AR 28). Specifically, the ALJ identified the representative occupations of retail stocker, cleaner II, and hand packager—each of which exists in significant numbers. (*Id.*).

Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2019, through June 30, 2023. (AR 29).

## IV. <u>DISCUSSION</u>

In his appeal, Plaintiff contends that the ALJ violated his due process rights by denying him the opportunity to cross-examine Dr. Lazarus, who conducted a post-hearing consultative examination and prepared a report on which the ALJ relied. (Pl.'s Br., ECF No. 6 at 17–19). Plaintiff argues that, under *Wallace v. Bowen*, 869 F.2d 187 (3d Cir. 1989), an ALJ who introduces new evidence after a hearing must afford the claimant not only the opportunity to submit written comments but also the opportunity to cross-examine the author of the post-hearing report. (*Id.*) Because the ALJ here obtained Dr. Lazarus's report after the first hearing, relied on it in assessing Plaintiff's RFC, and declined to subpoena Dr. Lazarus despite counsel's request, Plaintiff contends that the proceedings fell short of the minimum requirements of due process. (*Id.*). Based on the plain and explicit language of *Wallace*, the Court agrees and further finds that cross-examination of Dr. Lazarus was necessary to a full and fair presentation of the case.

### A. Under *Wallace*, Claimants Must Be Permitted to Cross-Examine Authors of Post-Hearing Reports When Necessary to the Full Presentation of the Case

In *Wallace*, the Third Circuit addressed a Social Security claimant's challenge to an ALJ's reliance on post-hearing medical reports that had not been subject to cross-examination. Thereafter the ALJ obtained consultative physician reports following the hearing and denied benefits based in part on those reports, the claimant objected, arguing that he had been deprived of his statutory and constitutional right to a decision based on "evidence adduced at the hearing." 869 F.2d at 189. The Third Circuit agreed and announced a clear, mandatory rule:

> [W]hen an [ALJ] chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also <u>an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case</u>, and must reopen the hearing for that purpose if requested.

*Id.* at 193 (emphasis added). *Wallace* thus establishes a categorical requirement that the right to cross-examine the *author* of a post-hearing report is not optional when necessary to the full presentation of the case. Accordingly, because Dr. Lazarus's evaluation and opinion were obtained after the June 8, 2023 hearing, Plaintiff was entitled to cross-examine Dr. Lazarus as the author of that report if such questioning was necessary to the full presentation of the case. Denying that opportunity constitutes a due process violation.

Despite this clear and explicit direction by the Third Circuit, Defendant argues that *Wallace* is factually distinguishable because in that case, no supplemental hearing was held whereas in this case, the ALJ held a supplemental hearing and allowed Plaintiff to cross-examine a medical expert, Dr. Cohen.[3] (Def.'s Br., ECF No. 8 at 17–18; Def.'s Supp. Br., ECF No. 12 at 1–2). The Court finds this argument unpersuasive. *Wallace* could not be clearer: when an ALJ relies on post-hearing reports, the claimant must be given the opportunity to cross-examine the *author* of those reports, not some other witness unfamiliar with the report's preparation or underlying reasoning.

---

[3]    Defendant also suggested at the status conference that *Wallace* is factually distinguishable because it involved a medical expert rather than a consultative examiner. Although Defendant appears to have abandoned that argument in its supplemental briefing, the Court sees no basis for distinguishing between the two. Indeed, other courts have found due process violations where an ALJ refused to permit cross-examination of a consultative examiner who submitted a post-hearing report. *See Goan v. Shalala*, 853 F. Supp. 218, 219 (S.D.W. Va. 1994) ("In her Findings and Recommendation, Magistrate Judge Feinberg found that '[w]here a post-hearing report is significant to the disability determination and will be considered in denying benefits, the ALJ's refusal of a claimant's request to cross-examine the consultive examiner is an abuse of discretion under the regulations and constitutes a denial of due process.' . . . Having conducted a *de novo* review of the evidence before the court, and the holdings in *Perales* and *Souch*, the court agrees with the Magistrate Judge's assessment of the claimant's rights.").

869 F.2d at 193. Accordingly, *Wallace* cannot be distinguished on these grounds and substituting Dr. Cohen's testimony for Dr. Lazarus's was not an adequate replacement.[4]

### B. Cross-Examination of Dr. Lazarus Was Necessary to the Full and Fair Presentation of Plaintiff's Case

Turning to the issue of whether cross-examination here was "necessary to the full presentation of the case," *Wallace*, 869 F.2d at 193, the Court finds that Plaintiff has easily met that standard. On its face, Dr. Lazarus's report presented internally inconsistent conclusions—an IQ score of 63 placing Plaintiff in the extremely low range of intellectual functioning, yet an opinion that Plaintiff had no limitation in understanding or carrying out simple instructions and only moderate limitations with complex instructions. (AR 458–464). The ALJ expressly relied on this opinion, finding it "partially persuasive." (AR 26). Plaintiff therefore had a clear need—and a right—to question Dr. Lazarus directly about the basis for these inconsistencies and his opinion. Moreover, the ALJ offered no explanation as to why he refused to allow Plaintiff to question Dr. Lazarus or why questioning Dr. Lazarus was not necessary for a full presentation of the case, despite counsel's explicit request to do so and the ALJ's substantial reliance on his report.

While Defendant cites to *Ven Ouk v. Berryhill*, No. 16-5509, 2018 WL 1898766 (E.D. Pa. Apr. 20, 2018), *Malandrino v. Astrue*, No. 10-670, 2012 WL 4105119 (D. Del. Sept. 18, 2012),

---

[4] Defendant also relies on *Tagle v. Astrue*, 279 F. App'x 827 (11th Cir. 2008), where the Eleventh Circuit held that a claimant's due process rights were satisfied when the ALJ obtained a medical expert, rather than the post-hearing consultative examiner, at a supplemental hearing. (Def.'s Supp. Br., ECF No. 12 at 2–3). That argument fails for two reasons. First, *Tagle* is an unpublished, out-of-circuit decision and therefore not binding on this Court. Second, the Third Circuit's controlling precedent in *Wallace* uses mandatory language that leaves no room for discretion. 869 F.2d at 193. Under *Wallace*, the inquiry is not whether the claimant had some opportunity to respond to the post-hearing report, but whether he had the opportunity to cross-examine the author when such examination is necessary for the full presentation of the case. 869 F.2d at 193.

and *Torres v. Barnhart*, 139 F. App'x 411 (3d Cir. 2005), the Court finds these cases distinguishable. (Def.'s Br., ECF No. 8 at 17–18; Def.'s Supp. Br., ECF No. 12 at 3).

First, this case is unlike *Ven Ouk v. Berryhill*, where the claimant's counsel "did not attempt to state what information [he] expected to [elicit] during cross-examination or explain why such information could not be obtained through other means." 2018 WL 1898766, at *8. Here, Plaintiff's counsel clearly articulated the purpose of the requested cross-examination—namely, to question Dr. Lazarus about his methodology, to probe the apparent inconsistency between the IQ score and his functional assessment, and to obtain an explanation reconciling those findings. (AR 391–92). Yet the ALJ failed to address that showing, and Defendant has been unable to offer any reason why such questioning is unnecessary, leaving the procedural defect unremedied.

Second, *Malandrino* and *Torres* are also readily distinguishable. Both involved requests to subpoena witnesses before the initial administrative hearing—circumstances not governed by *Wallace*, which addressed the post-hearing introduction of new evidence. Additionally, in *Malandrino*, the court found no error because the claimant "presented no evidence that Dr. Keyes's presence at the hearing was necessary for full presentation of the case." 2012 WL 4105119, at *10. Here, by contrast, Plaintiff has made that showing. (*See* AR 391–92). And in *Torres*, the Third Circuit found no abuse of discretion where the claimant sought to subpoena his treating psychiatrist merely to resolve perceived inconsistencies in his own therapy notes—an issue of interpretation rather than evidentiary fairness. 139 F. App'x at 414. The inconsistencies here were not of Plaintiff's making; they arose from the face of Dr. Lazarus's report, which the ALJ relied on in denying benefits.

In short, *Wallace*'s command is unmistakable. When an ALJ relies on post-hearing evidence, the claimant must be given the opportunity to cross-examine the author of that evidence

if doing so is necessary to the full presentation of the case. Because Dr. Lazarus's post-hearing report was pivotal to the ALJ's decision, and Plaintiff was denied the opportunity to question him, the Court finds that Plaintiff was deprived of the "full and fair hearing" guaranteed by the Social Security Act and the Due Process Clause.[5] Accordingly, the Court concludes that remand is warranted. On remand, the ALJ must reopen the hearing and afford Plaintiff the opportunity to cross-examine Dr. Lazarus as required by *Wallace*, 869 F.2d at 193, and reconsider the weight of Dr. Lazarus's opinion in light of that testimony.[6]

## CONCLUSION

For the foregoing reasons, the Court **VACATES** the Commissioner's final decision and **REMANDS** this case for further administrative proceedings consistent with this Opinion. An appropriate Order will follow.

---

[5] The Court recognizes the existence of the "harmless error" doctrine, under which remand is not required where an ALJ's error would have no effect on the outcome of the decision. *See Jackson v. Barnhart*, 120 F. App'x 904, 906 (3d Cir. 2005) (citing *Boone v. Barnhart*, 353 F.3d 203, 209 (3d Cir. 2003)); *see also Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003). Courts, however, have consistently cautioned that the harmless error doctrine should be applied "sparingly, and only in extraordinary cases." *Orchard v. Saul*, No. 18-2297, 2020 WL 1126235, at *6 (M.D. Pa. Jan. 21, 2020) (citation omitted), *R&R adopted*, 2020 WL 1082754 (M.D. Pa. Mar. 4, 2020). Here, for the reasons described above, the Court cannot determine that the outcome would have been the same had Plaintiff been afforded the procedural protections guaranteed by *Wallace* and therefore, the Court cannot find the error harmless. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2006) (the court is "not permitted to reweigh the evidence or impose their own factual determinations."); *see also Zuschlag v. Comm'r of Soc. Sec.*, No. 18-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Armone v. Saul*, No. 18-10526, 2021 WL 2103290, at *7 (D.N.J. May 25, 2021) ("It may be that, on remand, the Commissioner may again find that Plaintiff's mental impairments neither meet nor equal a Listed Impairment. That determination, however, is for the Commissioner—not this Court—to make in the first instance and must be based on a proper evaluation of the evidence of record.").

[6] Because the Court concludes that this matter must be remanded for further proceedings based on the ALJ's denial of Plaintiff's right to cross-examine Dr. Lazarus, the Court need not reach Plaintiff's remaining arguments on appeal.

**CHRISTINE P. O'HEARN**
**United States District Judge**